**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2014 MSPB 55**

Docket No. SF-0752-13-1913-I-1

**Johnathan Gajdos,[1]**

**Appellant,**

**v.**

**Department of the Army,**

**Agency.**

July 22, 2014

Johnathan Gajdos, Monterey, California, pro se.

Michael L. Halperin, Esquire, Monterey, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member
Vice Chairman Wagner issues a separate, dissenting opinion.

**OPINION AND ORDER**

¶1      The appellant petitions for review of an initial decision that affirmed the agency's furlough action.  For the following reasons, we find that the petitioner has not established a basis under 5 C.F.R. § 1201.115 to grant the petition for review.  We therefore DENY the petition and AFFIRM the initial decision's due

---

[1] Pursuant to 5 C.F.R. § 1201.36(a), this appeal was part of a consolidation.  *Army Training Doctrine Command v. Department of the Army*, MSPB Docket No. SF-0752-13-4840-I-1.

process analysis AS MODIFIED by this Opinion and Order, still affirming the furlough action.

## BACKGROUND

¶2      On May 28, 2013, the agency issued a Notice of Proposed Furlough informing the appellant, an Assistant Professor, that the Defense Language Institute Foreign Language Center (DLIFLC) proposed to furlough him for no more than 11 workdays due to "the extraordinary and serious budgetary challenges facing the Department of Defense (DoD) for the remainder of Fiscal Year (FY) 2013, the most serious of which is the sequester that began on March 1, 2013." Initial Appeal File (IAF), Tab 1 at 1, 7-8; *Army Training Doctrine Command v. Department of the Army,* MSPB Docket No. SF-0752-13-4840-I-1, Consolidation File (CF), Tab 8 at 23. The agency notified the appellant that the Budget Control Act of 2011, as amended by the American Taxpayer Relief Act of 2012, made across-the-board reductions to budgetary resources for the federal government, that DoD must and will protect wartime operations funding for its troops in harm's way, that "[t]his inevitably means larger cuts in base-budget funding for the Operation and Maintenance (O&M) accounts," and that DoD "will need funding in other accounts that can be used to provide the warfighters with what they need to protect national security and fight the war." CF, Tab 8 at 23. The agency afforded the appellant an opportunity to respond orally and/or in writing to the proposal, to review the supporting material, and to furnish affidavits or other supporting documentary evidence in his answer. *Id.* at 24. The proposal notice indicated that no decision to furlough had been made or would be made until full consideration was given to the appellant's reply. *Id.*

¶3      By written notice dated June 14, 2013, the agency's deciding official informed the appellant that his written and oral replies to the proposal notice had been reviewed and carefully considered, determined that the reasons for the proposed furlough remained valid, and indicated that the procedures and

conditions related to the furlough were determined to be the most equitable means of implementing the furlough and that the appellant would be required to be on a discontinuous furlough for no more than 11 workdays during the period from July 8, 2013, through September 30, 2013. IAF, Tab 1 at 10-11. The record includes a Standard Form 50 reflecting the appellant's furlough, effective July 8, 2013, on discontinuous days between July 8, 2013, and September 30, 2013, not to exceed a maximum of 88 hours, with the appellant's supervisor informing the appellant of the specific furlough dates before the beginning of each pay period. *Id*. at 7-8.

¶4        On appeal, the appellant asserted that: (1) the furlough did not promote the efficiency of the service because active-duty service member students at the DLIFLC would be present for instruction with half-strength teaching teams, which could result in lower student graduation rates and increased costs associated with extending the length of student training; (2) it appeared that his written response to the proposal had not been considered because the decision notice incorrectly indicated that he had made an oral reply and did not specifically address the concerns he had raised; (3) the decision notice did not specify the reasons for the decision, but merely indicated that the reasons set forth in the proposal notice remained valid; (4) the decision notice did not state the basis for selecting a particular employee for furlough, as required by 5 C.F.R. § 752.404, and the agency did not provide him with any materials the agency relied upon specific to his furlough action; (5) the DLIFLC Commandant, who signed the decision letter, did not appear to be empowered to make the decision, which should have been signed by the Secretary of Defense as the true deciding official; and (6) the agency engaged in discrimination based on national origin because it furloughed U.S. citizens but not foreign national civilian employees on H-1B visas. IAF, Tab 1 at 5; *see* IAF, Tab 8 at 5-10.

¶5        The administrative judge consolidated this appeal with several other appeals. CF, Tabs 2-3. Based on the written record because the appellants either

did not request a hearing or withdrew their request for a hearing, *see*, *e.g.*, IAF, Tab 13, the administrative judge affirmed the furlough actions, CF, Tab 21, Initial Decision (ID) at 1-2, 12.  The administrative judge found that the agency subsequently reduced the number of furlough days served by the appellants to 6 workdays.  ID at 3.  She further found that the agency proved that the furloughs promoted the efficiency of the service by offering unrebutted evidence that the agency had to make significant spending cuts because of sequestration,[2] that the furloughs helped the agency avoid a deficit without jeopardizing military readiness, and that the agency imposed the furloughs uniformly with exceptions only for a limited number of categories, such as employees who were needed to protect life or property or whose absence would result in the failure of a critical mission.  ID at 6.

¶6      Regarding the appellants' claim relating to H-1B visa holders, who are not U.S. citizens, the administrative judge held that the appellants did not establish a prima facie case of discrimination because citizenship is not a cognizable protected category under Title VII of the Civil Rights Act of 1964, and the appellants did not specify that they were members of a protected category with respect to national origin, given that U.S. citizens encompass a variety of national origins.  ID at 7-8.  The administrative judge also held that the agency established a legitimate management reason for exempting H-1B visa holders from the furlough, namely, regulations requiring the agency to pay H-1B visa holders even if the employee is not working as long as the inability to work is the result of the

---

[2] Under the Balanced Budget and Emergency Deficit Control Act, as amended, *see* 2 U.S.C. § 901a, Congress required the Office of Management and Budget to calculate and the President to order a "sequestration" on March 1, 2013, for FY 2013 that would reduce each spending account within certain security and nonsecurity categories by a uniform percentage to achieve certain reduction goals.  *See Chandler v. Department of the Treasury*, 120 M.S.P.R. 163, ¶ 4 (2013); CF, Tab 7 at 69.

agency's action or inaction.  ID at 8.  The administrative judge rejected the appellants' harmful error claim, finding as to 5 C.F.R. § 752.404(b)(2) that there was no evidence that the appellants and other employees who were not furloughed were in the same competitive level, and that the agency, in any event, provided sufficient notice of the basis for furloughing some employees but not others and the specific reasons for the furlough.  ID at 8-9.

¶7        Finally, the administrative judge held that the appellants did not prove that the agency violated their due process rights.  ID at 10-12.  In this regard, the administrative judge held that there was no regulatory or judicially imposed requirement that the agency specifically address all arguments raised in a response to a proposal notice, and that a failure to address all such arguments was not a due process violation.  The administrative judge also noted that a May 14, 2013 memorandum from the Secretary of Defense indicated that deciding officials would have the discretion to execute the full range of options, including reducing the number of days an individual is furloughed or granting an exception from the furlough.  ID at 11; *see* CF, Tab 7 at 70-74.  The administrative judge further held that the deciding official's limited discretionary review in this case was consistent with the nature of furloughs resulting from a sequestration, which are unlike other adverse actions because factors normally within a deciding official's discretion, such as the factors set forth in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), which are relevant in agency penalty determinations, do not apply here.  ID at 12.

## ANALYSIS

¶8        The appellant asserts on review that there is substantial evidence indicating that the deciding official did not have the authority to reverse the course of the proposed furlough, including: (1) a memorandum from the deciding official indicating that the furlough was mandatory to meet required spending reductions and that neither the union nor management would be able to stop the furlough;

(2) an email from the deciding official indicating that "we will furlough only if we are told we have to"; (3) the agency's response to the appeal, which indicated that the agency is a "top-down organization," which is required to obey orders within the chain of command, and the deciding official was ordered to furlough all non-exempt civilian employees; and (4) the agency's response to an interrogatory indicating that, if an employee was not exempt from the furlough, the response to the proposal notice was given no further consideration. Petition for Review (PFR) File, Tab 1 at 4-6. The appellant further contends that his pre-decisional reply opportunity was precluded because a decision made by the Secretary of Defense before the proposal notice was issued required the deciding official to furlough him, and that the agency did not follow its own adverse action procedures, which required that deciding officials have "full authority" to make a decision. *Id*. at 7. In this regard, the appellant asserts that he had no opportunity to reply to the Secretary of Defense, "the official who appears to have actually been the one making the decision to effect this adverse action." *Id*. at 9. Finally, the appellant asserts that the action did not promote the efficiency of the service because the agency admitted that the furlough created delays, mission failures, and cancellations relating to administrative or day-to-day operations. *Id*. at 8.

¶9    "Furlough" means the placing of an employee in a temporary status without duties and pay because of a lack of work or funds or other nondisciplinary reasons. 5 U.S.C. § 7511(a)(5); 5 C.F.R. § 752.402. A furlough of 30 days or less is appealable to the Board under 5 U.S.C. chapter 75. 5 U.S.C. §§ 7512(5), 7513(d); 5 C.F.R. § 752.401(a)(5). A furlough of more than 30 days is appealable to the Board as a reduction in force (RIF) action under 5 C.F.R. § 351.901. Agencies must conduct furloughs of more than 30 days according to the RIF procedures of 5 C.F.R. Part 351, and the Board will review such actions to determine whether the agency properly invoked and applied the RIF regulations. *Williams v. Tennessee Valley Authority*, 24 M.S.P.R. 555, 557 (1984); 5 C.F.R. § 351.201(a)(2). Agencies may conduct furloughs of 30 days or

less without following RIF procedures. *Chandler*, 120 M.S.P.R. 163, ¶ 5. Such actions are reviewable by the Board under the "efficiency of the service" standard of 5 U.S.C. § 7513(a). *Chandler*, 120 M.S.P.R. 163, ¶ 5; *Clerman v. Interstate Commerce Commission*, 35 M.S.P.R. 190, 192 (1987); *see* 5 C.F.R. § 752.403. Both RIFs and adverse action furloughs, however, are taken for the same types of nondisciplinary reasons. *Chandler*, 120 M.S.P.R. 163, ¶ 5; *see Hastie v. Department of Agriculture*, 24 M.S.P.R. 64, 75 (1984), *overruled on other grounds by Horner v. Andrzjewski*, 811 F.2d 571, 574-77 (Fed. Cir. 1987). In light of the basic similarities between RIF and adverse action furloughs, RIF principles are instructive in determining the scope of the Board's review of adverse action furloughs and what it means for a furlough of 30 days or less to be taken for the "efficiency of the service." *Chandler*, 120 M.S.P.R. 163, ¶ 7.

¶10    Furloughs are unique among adverse actions because by definition they are taken for nondisciplinary reasons and are generally used to address work or funding shortages or other matters that are not personal to the affected employee. 5 U.S.C. § 7511(a)(5); *Chandler*, 120 M.S.P.R. 163, ¶ 8. An agency satisfies the "efficiency of the service" standard in a furlough appeal by showing, in general, that the furlough was a reasonable management solution to the financial restrictions placed on it and that the agency applied its determination as to which employees to furlough in a "fair and even manner," *Clark v. Office of Personnel Management*, 24 M.S.P.R. 224, 225 (1984), i.e., that the agency applied the adverse action furlough uniformly and consistently, just as it is required to apply a RIF, *Chandler*, 120 M.S.P.R. 163, ¶ 8; 5 C.F.R. § 351.201(c). The agency is not required to apply the furlough in such a way as to satisfy the Board's sense of equity. *Chandler*, 120 M.S.P.R. 163, ¶ 8. Rather, the agency must treat similar employees similarly and justify any deviations with legitimate management reasons. *Id*.; *see* 5 C.F.R. § 752.404(b)(2) ("When some but not all employees in a given competitive level are being furloughed, the notice of proposed action must state the basis for selecting a particular employee for

furlough, as well as the reasons for the furlough."). Which employees are similarly situated for purposes of an adverse action furlough will be decided on a case-by-case basis, but the Board is guided by RIF principles in making that determination. *Chandler*, 120 M.S.P.R. 163, ¶ 8; *see* 5 C.F.R. § 752.404(b)(2) (applying RIF competitive level principles to adverse action furloughs).

¶11    The Board has also held that its efficiency of the service determination does not encompass agency spending decisions per se, including spending on personnel matters. *See Chandler*, 120 M.S.P.R. 163, ¶ 9. Such matters belong to the judgment of agency managers, who are in the best position to decide what allocation of funding will best allow the agency to accomplish its mission. *Id*. The efficiency of the service determination does encompass issues relating to the uniform and consistent application of the furlough, including whether the agency used a furlough to target employees for personal reasons, or attempted to exempt certain employees from the furlough without legitimate management reasons.[3] *Id*.

¶12    Although the appellant asserts that the agency's action did not promote the efficiency of the service because the agency admitted that the furlough created delays, mission failures, and cancellations relating to administrative or day-to-day operations, PFR File, Tab 1 at 8, these types of disruptions are the likely result of any furlough and do not demonstrate a failure to meet the

---

[3] The dissent asserts in ¶ 4 that the Board applies "a diminished due process analysis" when reviewing RIF and furlough adverse actions. We disagree. We do agree with the dissent, though, that RIF and furlough adverse actions and inability to perform cases are similar in that they all are not disciplinary in nature. We note, however, that an agency takes a physical inability to perform action based on a finding that the particular individual cannot do his or her job for medical reasons personal to the employee. In contrast, furlough or RIF adverse actions target entire groups of employees or, indeed at times, entire agencies for reasons not personal to any employee. Yet, agencies always must satisfy the efficiency of the service standard in all these cases for the Board to sustain the agency's action.

efficiency of the service standard. We agree with the administrative judge's determination that the agency proved that the furlough promoted the efficiency of the service because the agency showed that the furlough was a reasonable management solution to the financial restrictions placed on it and applied its determination as to which employees to furlough in a fair and even manner. ID at 3-6; *see Chandler*, 120 M.S.P.R. 163, ¶ 8. We also agree with the administrative judge that the agency established a legitimate management reason for exempting H-1B visa holders from the furlough and that the appellant did not prove national origin discrimination. ID at 7-8. To the extent that the appellant has alleged that the agency committed harmful error because the deciding official did not have "full authority" to make a decision regarding the furlough, the appellant has not shown that any error in that regard likely caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See* 5 C.F.R. § 1201.56(c)(3).

¶13        Regarding the appellant's due process contention, procedural due process rights derive from a property interest in which the individual has a legitimate claim of entitlement. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). Once acquired, a property interest falls within the protections of procedural due process. A property interest is not created by the U.S. Constitution; rather, it is created and its dimensions are defined by existing rules or understandings that stem from an independent source, such as a statute. *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1374 (Fed. Cir. 1999).

¶14        Here, 5 U.S.C. §§ 7512(5) and 7513(a) provide that an agency may furlough an employee for 30 days or less "only for such cause as will promote the efficiency of the service." This language creates a legitimate claim of entitlement to retention in a pay status, and thus a property interest, that conditions the placement of an employee in a temporary status without duties and pay on such cause as will promote the efficiency of the service. *See Stone*, 179 F.3d at 1374 ("If the government gives a public employee assurances of continued employment

or conditions dismissal only for specific reasons, the public employee has a property interest in continued employment."); *McGriff v. Department of the Navy*, 118 M.S.P.R. 89, ¶¶ 27-28 (2012) (finding the appellant entitled to constitutional due process, i.e., notice and a meaningful opportunity to respond, upon being indefinitely suspended based on the agency's security clearance decision); *Kriner v. Department of the Navy*, 61 M.S.P.R. 526, 532 (1994) (the agency's deprivation of the appellant's property interest in his employment—his suspension from his job—triggered the application of due process); *see also Krause v. Small Business Administration*, 502 F. Supp. 1332, 1338-39 (S.D.N.Y. 1980) (finding a protected property interest in a federal employee's expectation of continued and uninterrupted public employment because the agency could suspend him for 7 days only "for such cause as will promote the efficiency of the service").  In fact, the Board held in *Chandler*, 120 M.S.P.R. 163, ¶ 31, that information regarding the specific process applied by the agency in conducting a furlough would be relevant to the issue of due process, thus implicitly finding a protected property interest at stake.  Having found that the appellant has a property interest at stake in this case, the question remains as to what process is due, and whether the procedure that the agency applied sufficiently satisfied the mandates of due process.

¶15        In a May 14, 2013 memorandum to the Secretaries of the Military Departments and other DoD managers, the Secretary of Defense directed defense managers to prepare to furlough most DoD civilians for up to 11 days.  CF, Tab 7 at 70.  The memorandum set forth the schedule for furloughs and specific exceptions and noted that the decision was made very reluctantly.  *Id*.  The memorandum indicated that the Secretary of Defense, along with the senior civilian and military leadership of DoD, spent considerable time reviewing information related to the need for furloughs and described in detail the major budgetary shortfalls driving the basic furlough decision, including the amount of the reduction in different budgetary accounts, an increase in fuel costs related to

wartime operating costs, and the amount of time left in the fiscal year. *Id*. at 70-71. The memorandum also described the need to minimize the adverse effect on military readiness, and detailed the other actions taken to reduce the shortfall, such as cutbacks in training and facilities maintenance and efforts made to obtain Congressional approval to shift funds between accounts. *Id*. The Secretary of Defense determined that, even after taking these actions, DoD was still short of needed operating funds for FY 2013, and that deciding to furlough civilian personnel was an unpleasant but necessary choice when faced with the alternative of making even larger cutbacks in training and maintenance, which would further reduce readiness to handle contingency operations and put in greater jeopardy military readiness in future fiscal years. *Id*. at 71. The memorandum indicated that the Secretary of Defense sought advice and input from senior leaders in the military departments and agencies, as well as advice from senior civilian and military staff, and that the decision to direct furloughs of up to 11 days for most civilian personnel represented half the number originally planned, which reflected vigorous efforts to meet budgetary shortfalls through actions other than furloughs. *Id*. The Secretary of Defense noted that furloughs would be imposed in every military department and almost every agency with limited exceptions driven by law and the need to minimize harm to mission execution, such as civilians deployed to combat zones, civilians needed to protect life and property, and civilians excepted for specific mission reasons or because furloughing them would not free up money for mission needs. *Id.* at 71-72.

¶16      The May 14, 2013 memorandum also identified who could be a deciding official, indicated that deciding officials were "charged with, and [were] accountable for, making final decisions on furloughs for individual employees after carefully considering the employee's reply, if any, and the needs of the Department," and stated that deciding officials "[would] have the authority to execute the full range of options with respect to providing relief in individual employee cases," including reducing the number of days or hours an individual

was to be furloughed or granting the employee an exception from the furlough. *Id*. at 74.

¶17    After the agency issued its notice proposing his furlough, the appellant submitted his written response to the notice to a "Reply Official," i.e., the Deputy Chief of Staff for Personnel and Logistics. CF, Tab 8 at 23-24, 50-51. In his June 14, 2013 decision letter, the Commandant of the DLIFLC indicated that the appellant's response was "reviewed and carefully considered," but that the reasons for the proposed furlough remained valid. IAF, Tab 1 at 10-11. In its response to one of the appellant's interrogatories in this case, the agency indicated that the following procedures were used after the appellant filed his response to the proposed furlough:

> When the Agency received written replies to the Proposed Furloughs, the Reply Official drafted a summary of the employee's arguments, and sent the reply and summary to the Office of the Staff Judge Advocate (OSJA) for a legal review to determine whether the employee fell within one of the furlough exemptions. The OSJA conducted a review, after which, the package was sent to the Deciding Official for final review and signature. If the employee was not exempt from furlough, their [sic] response was given no further consideration.
>
> The Appellant neither fell into one of the furlough exemptions, nor did he claim to be exempt in his response. As a result, his response was given no consideration beyond what is described above.

IAF, Tab 12 at 10. The appellant also relies upon a March 1, 2013 memorandum from the Commandant to DLIFLC faculty and staff indicating that "the furlough will affect all DLIFLC Department of Army civilians; there will be very few exceptions for the Army and we do not expect any for DLIFLC," that "the furlough will be mandatory to meet required spending reductions," and that "[n]either the Union nor DLIFLC management will be able to stop the furlough." IAF, Tab 11 at 9. The appellant further contends that the Commandant stated during a February 27, 2013 "Fiscal Uncertainty" briefing that "we can meet our budget cuts without furlough, so we will furlough only if we are told we have to."

*Id.* at 11; *see* CF, Tab 7 at 6 (the agency's response to the appeal indicating that the appellants do not fall into one of the categories of exempt civilians, and "[b]ecause the Appellants were not exempt from the furlough, and because the Agency was required … to furlough all non-exempt civilian employees, the Agency furloughed the Appellants."). The appellant asserts these documents indicate that the Commandant had only limited, if any, authority and was not the true decision maker because he did not have the authority to reverse the furlough. PFR File, Tab 1 at 4-8. Thus, the appellant alleges that additional procedural protections were required in the form of an opportunity to submit a response to an official, such as the Secretary of Defense, with the authority to reverse the furlough. *Id.* at 9.

¶18        Due process requires, at a minimum, that an employee being deprived of his property interest be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Such opportunity "should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545-46 (1985). Nevertheless, "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances." *Mathews*, 424 U.S. at 334. Rather, it is "flexible and calls for such procedural protections as the particular situation demands." *Id.* Thus, resolution of the issue of whether the administrative procedures provided here are constitutionally sufficient requires the Board to analyze the governmental and private interests that are affected. *See id.* In particular, identification of the specific dictates of due process generally requires consideration of three factors: first, the private interest affected by the official action; second, the risk of an erroneous deprivation of the private interest through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards; and third, the government's interest, including the function involved and the fiscal and administrative burdens the additional or substitute procedural requirement would entail. *Id*. at 335.

¶19 Regarding the first *Mathews* factor, i.e., the private interest affected by the action, although the Supreme Court has recognized the severity of depriving someone of the means of livelihood by terminating the individual, it has also emphasized that, in determining what process is due, one must take into account the length and finality of that deprivation. *Gilbert v. Homar*, 520 U.S. 924, 932 (1997); *see Miranda v. Southern Pacific Transp. Co.*, 710 F.2d 516, 524 (9th Cir. 1983) (Wallace, J., concurring in part and dissenting in part) ("Although the requirements of procedural due process apply to the deprivation of even small amounts of property, the severity of the deprivation is a factor to be weighed in determining the appropriate form of the hearing."). Thus, as long as a furloughed or suspended employee receives a sufficiently prompt post-deprivation hearing, the lost income from such temporary actions is "relatively insubstantial (compared with termination), and fringe benefits such as health and life insurance are often not affected at all." *See Homar*, 520 U.S. at 932. The 6-day furlough in this case is far less substantial than the termination at issue in *Loudermill* and the approximately 10-month suspension at issue in *McGriff*, 118 M.S.P.R. 89, ¶ 29, which the Board described as a "significant" deprivation. We nevertheless recognize that, although a furlough is a temporary deprivation, like a suspension, it is nonetheless "likely to cut off subsistence income and to prevent one from obtaining other gainful employment," and it may have a "great practical impact" on the employee. *Engdahl v. Department of the Navy*, 900 F.2d 1572, 1575 (Fed. Cir. 1990).

¶20 Second, we must consider the risk of an erroneous deprivation of such interest through the procedures used and the probable value, if any, of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335. When the Court in *Loudermill*, 470 U.S. at 535, 542-46, considered the second *Mathews* factor in

the context of a public employee who had been discharged from employment based on his dishonesty in filling out an employment application, it explained that, for the purpose of reaching an accurate decision, the opportunity to respond to a proposed removal is important for two reasons. First, an adverse action will often involve factual disputes and consideration of an employee's response may clarify such disputes. *Id.* at 543; *see Stone*, 179 F.3d at 1376. Second, "[e]ven where the facts are clear, the appropriateness or necessity of the [penalty] may not be," and in such cases the employee must receive a "meaningful opportunity to invoke the discretion of the decisionmaker." *Loudermill*, 470 U.S. at 543. Thus, "the employee's response is essential not only to the issue of whether the allegations are true, but also with regard to whether the level of penalty to be imposed is appropriate." *Stone*, 179 F.3d at 1376.

¶21 We find in this case that there was a low risk of an "erroneous" deprivation of a property interest through the procedures used by the DLIFLC. As set forth above, the procedures used by the agency were designed to limit the risk of an erroneous deprivation of a property interest by ensuring that the appellant did not fall within one of the furlough exemptions. The appellant does not suggest that any such error occurred, or was even likely to occur, concerning him. *See Wash. Teachers' Union Local # 6 v. Bd. of Educ.*, 109 F.3d 774, 780 (D.C. Cir. 1997) ("Although the Union suggests that factual errors, such as attributing disciplinary proceedings to the wrong teachers, could produce erroneous scores on ranking forms, the record contains no evidence that such errors have occurred, much less that the risk of such errors is significant.").

¶22 Moreover, in considering *what* procedural protections are required in this *situation*, there is a fundamental difference in the nature of the action at issue here as compared to the actions at issue in such cases as *Loudermill* and *McGriff*. As set forth above, the action in *Loudermill* was based on employee misconduct *such that* the court found it necessary, in order to reduce the risk of an erroneous deprivation, to permit the employee to invoke the discretion of the decision

maker as to the appropriateness or necessity of the penalty. 470 U.S. at 545-46. Similarly, in *McGriff*, 118 M.S.P.R. 89, ¶¶ 3-6, 33, the Board held that a significant question existed as to "whether the appellant had a meaningful opportunity to respond to the proposed indefinite suspension such that the procedures that were used posed a risk of erroneous deprivation of the appellant's property interest." There, the agency had indefinitely suspended the appellant based on its suspension of his security clearance, which in turn was based on alleged conduct that involved questionable judgment, untrustworthiness, unreliability, and unwillingness to comply with rules and regulations. Here, by contrast, DoD and the agency made certain policy and spending decisions and directed the furlough action at the appellant's position, not at any conduct, characteristic, qualification, or reputation of the appellant as an individual. *See Chandler*, 120 M.S.P.R. 163, ¶ 8 (furloughs are unique among adverse actions because by definition they are taken for nondisciplinary reasons and are generally used to address work or funding shortages or other matters that are not personal to the affected employee). Thus, the agency did not impose a "penalty" upon the appellant that was amenable to invoking the discretion of the deciding official in favor of the appellant as an individual. *See id.*, ¶ 31 (the factors set forth in *Douglas*, 5 M.S.P.R. at 305-06, which are relevant in agency penalty determinations in adverse action cases, do not apply to furloughs, which are nondisciplinary).

¶23        In making such policy decisions in conducting a furlough, agencies have broad management discretion. *See id.*, ¶ 9 (matters such as spending decisions belong to the judgment of agency managers, who are in the best position to decide what allocation of funding will best allow the agency to accomplish its mission); *Department of Labor v. Avery*, 120 M.S.P.R. 150, ¶ 10 (2013) (agencies retain the expertise to make spending choices to save funds necessary to avoid furloughs). Thus, there is little risk in the procedures used by the agency of an "error" as that term is generally understood. *See UDC Chairs Chapter, Am. Ass'n*

*of Univ. Professors v. Bd. of Trustees of the Univ. of the Dist. of Columbia*, 56 F.3d 1469, 1474 (D.C. Cir. 1995) ("Where, as here, the deprivation turns on a policy decision and not on an individual's characteristics, a predeprivation hearing would do little to reduce the risk of erroneous deprivation of the chairpersons' interests."); *Brown v. Brienen*, 722 F.2d 360, 368 (7th Cir. 1983) (Flaum, J., concurring) (the "risk of government error and the value of a predeprivation hearing in reducing that risk" is "insubstantial" when the decision not to grant compensatory time off is based on staffing shortages and individualized determinations of fact or law are not necessary). We therefore find only minimal probable value in the substitute procedural safeguard suggested by the appellant, namely, an opportunity to submit his response to a different decision maker, such as the Secretary of Defense, who would presumably have had superior authority to that of the DLIFLC Commandant with respect to reversing the furlough.

¶24        Our analysis of the third *Mathews* factor*,* the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail, turns largely on sheer numbers. *See Wash. Teachers' Union Local # 6*, 109 F.3d at 781. Irrespective of the total number of DoD civilian employees affected by the furlough nationwide, the record reflects that the Department of the Army's furlough alone was expected to impact 251,000 civilians. CF, Tab 7 at 49, 52. Requiring the Secretary of Defense to have considered and answered all of the responses to the proposed furloughs affecting DoD civilian employees would have slowed the furlough process considerably and added a significant administrative burden. *Cf. Wash. Teachers' Union Local # 6*, 109 F.3d at 781 (requiring principals to answer each of the 400 responses to the teachers' ranking forms would have slowed the RIF process considerably, both delaying and reducing the financial savings that were desperately needed). Under these circumstances, we find that the government's interest under the third *Mathews*

factor weighs heavily. *See Whalen v. Mass. Trial Court*, 397 F.3d 19, 25 (1st Cir. 2005) (because reorganizations often affect numerous employees, the governmental interest in efficient administration may weigh more heavily).

¶25        Balancing the *Mathews* factors and taking into account the availability of post-deprivation relief before the Board, *see Clements v. Airport Auth. of Washoe Cnty*., 69 F.3d 321, 332 (9th Cir. 1995) (the nature of subsequent proceedings may lessen the amount of process that the state must provide pre-termination), we hold that the agency satisfied the requirements of due process in this case. The agency's need to cut expenditures quickly and efficiently in the face of an extensive number of civilian employees furloughed nationwide as a result of the sequester outweighed the appellant's interest given the length of the furlough and the minimal risk of error involved.[4]

---

[4] In concluding that the agency failed to provide the appellant with a meaningful opportunity to respond because the deciding official presumably did not give any consideration to the appellant's response to the furlough notice, the dissent relies on a statement the appellant made in his January 6, 2014 "Supplement to the Record." The appellant claimed therein that the agency, in response to one of his interrogatories, wrote that, "[i]f the employee was not exempt from [the] furlough, their [sic] response was given no **further consideration** . . . . The appellant neither fell into one of the furlough exemptions, nor did he claim to be exempt in his response. As a result, his response was given no consideration beyond what was described above." IAF, Tab 14 at 6, Tab 12 at 10 (emphasis added). We believe the dissent's reliance on the appellant's statement may be misplaced for three reasons.

First, the quoted language itself denotes, by inclusion of the words "further consideration," that the agency did consider the appellant's response. Second, the appellant omitted a crucial sentence at the end of the agency's response to this interrogatory. Importantly, in this missing sentence, the agency explained that: "[t]he appellant acknowledged receipt . . . of the letter the Agency presented him, **which informed him that his response had been considered**, but that, nonetheless, the reasons for furloughing him remained valid and would go into effect as planned." IAF, Tab 12 at Exhibit E (emphasis added). This omitted language reflects once again that the agency gave consideration to the appellant's reply. Third, the agency's response to the interrogatory states that the agency provided the appellant with "no consideration beyond what is described above." The phrase, "what is described above" refers to the preceding paragraph of the agency's response to the interrogatory, in which the agency

¶26    Accordingly, we AFFIRM the initial decision AS MODIFIED by this Opinion and Order, still affirming the furlough action.

ORDER

¶27    This is the final decision of the Merit Systems Protection Board in this appeal.  Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

---

elaborates on the process it provided the appellant and other employees to ensure that they were given a meaningful opportunity to respond.  In particular, as we stated above in ¶ 17, the agency reported that:

> When the Agency received written replies to the Proposed Furloughs, the Reply Official drafted a summary of the employee's arguments, and sent a reply and summary to [OSJA] for a legal review to determine whether the employee fell within one of the furlough exemptions.  The OSJA conducted a review, after which, the package was sent to the Deciding Official for final review and signature.  If the employee was not exempt from furlough, their [sic] response was given no further consideration.

*Id*.  As this language makes plain, the agency's review process was a far cry from "an empty formality," as the dissent characterizes it.  In fact, the agency provided three steps during the review process: (a) the reply official's receiving, reviewing, and summarizing the appellant's reply; (b) the OJSA's receiving and legally reviewing both the appellant's reply and the reply official's summary of the appellant's arguments; and (c) the deciding official's review, prior to signing the final decision, of the "package," which included the appellant's response.  In light of these factors, we believe that the agency ensured that the appellant was given a meaningful opportunity to respond to the furlough notice and that the agency, including the deciding official, duly considered the appellant's response to the furlough notice.  *See Lachance v. Erickson*, 522 U.S. 262, 266 (1998) ("The core of due process is the right to notice and a meaningful opportunity to be heard.").

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If

you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e5(f) and 29 U.S.C. § 794a.

FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

in

*Johnathan Gajdos v. Department of the Army*

MSPB Docket No. SF-0752-13-1913-I-1

¶1    In this appeal, the agency has acknowledged that the appellant's response to its proposed furlough action was not given any consideration by the deciding official after it was determined that he did not fall into one of several specified furlough exemptions.  Initial Appeal File (IAF), Tab 12 at 10.  This issue raises a concern that the appellant was not provided a meaningful opportunity to respond to the agency's notice of proposed action.  After finding that furloughs of 30 days or less are fundamentally different in nature from other types of adverse actions appealable to the Board, the majority holds that the agency satisfied minimum requirements of due process.  Majority Opinion (Maj. Op.), ¶¶ 18-25.  I respectfully dissent because I disagree with the majority's determination that employees subject to furlough actions are entitled to less protection under the Fifth Amendment than those facing other adverse actions identified in 5 U.S.C. § 7512.

¶2    As explained more fully in my separate opinion in *Chandler v. Department of the Treasury,* 120 M.S.P.R. 163 (2013), I disagree with the majority's application of our highly deferential regulatory standard for reviewing reduction in force (RIF) cases to the adjudication of the government-wide furloughs implemented as a result of sequestration.  The plain language of the Civil Service Reform Act[1] simply provides no basis for concluding that Congress intended that

---

[1] The Civil Service Reform Act (Act) identifies the following five personnel actions as subject to the substantive and procedural protections set forth in 5 U.S.C. § 7513: removals; suspensions for more than 14 days; reductions in grade; reductions in pay; and furloughs of 30 days or less.  5 U.S.C. § 7512(1)-(5).  The Act also explicitly

furloughs of 30 days or less be treated any differently from the other statutorily appealable adverse actions identified in 5 U.S.C. § 7512(1)-(4). Had Congress so intended, it presumably would have excluded furloughs, as it did RIFs, from coverage under 5 U.S.C. § 7513. However, beyond noting that furloughs and RIF actions are both non-disciplinary and generally triggered by a shortage of funds, the majority still fails to provide a convincing legal basis for deviating so significantly from the plain statutory language by essentially importing deferential RIF concepts into our adjudication of actionable furloughs.

¶3      Consistent with the approach announced in *Chandler*, the majority here undertakes to reexamine the question of what process is constitutionally due furloughed employees. Maj. Op., ¶¶ 10, 22. I recognize that the Supreme Court, in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), said that "due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place, and circumstances . . . [but, rather] is flexible and calls for such procedural protections as the particular situation demands." *Id.* However, the Supreme Court has already distilled the *Mathews* factors to arrive at the fundamental contours of due process, i.e., notice and meaningful opportunity to respond, when a public employee is deprived of a property interest in employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985). For this reason, I believe that the majority's discussion (Maj. Op., ¶¶ 18-25) of *Mathews v. Eldridge*, and particularly its application of the *Mathews* factors to define what constitutional process is due under these circumstances, to be unnecessary. Instead, our examination of an employee's entitlement to due process should be governed by *Loudermill.*

¶4      Nor do I believe that we can construe 5 U.S.C. § 7512 as creating a separate class of adverse actions, furloughs, warranting a diminished due process analysis.

---

excludes certain personnel actions, including, inter alia, a RIF, from coverage under 5 U.S.C. § 7513.

The majority explains that the need for this reexamination stems from the fact that, unlike the other adverse actions identified in 5 U.S.C. § 7512, a furlough is taken for nondisciplinary reasons, i.e., to address work or funding shortages, rather than in response to individual misconduct.  However, both the Board and the U.S. Court of Appeals for the Federal Circuit have long recognized that removals and suspensions taken for physical or medical reasons are not disciplinary in the narrow sense of the term, i.e., a sanction for improper conduct, but only in the broader sense of maintaining the orderly working of the government.  *See Thomas v. General Services Administration*, 756 F.2d 86, 88-89 (Fed. Cir. 1985) (appeal of an indefinite suspension pending a psychiatric fitness for duty examination); *Hunley v. Department of the Air Force,* 36 M.S.P.R. 493, 495 (1988) (appeal of a period of enforced leave exceeding 14 days because of medical restrictions of no bending, lifting, climbing and walking); *Jackson v. U.S. Postal Service*, 5 M.S.P.R. 335, 336-37 (1981) (appeal of removal for failure to meet physical requirements, i.e., lifting, climbing stairs, walking, standing and bending, of the position), *aff'd*, 666 F.2d 258 (Fed. Cir. 1982).  Yet, despite the fact that these actions are not taken in response to individual misconduct, the Board has not lowered the due process requirements afforded to employees subjected to them.  Indeed, we have held that, when an employee has been placed on enforced leave for medical reasons without notice and an opportunity to respond, the action must be reversed because it cannot withstand constitutional scrutiny.  *Vargo v. U.S. Postal Service,* 49 M.S.P.R. 284, 287 (1991).

¶5	If furloughed employees are entitled to the same constitutional protection afforded individuals facing other statutorily appealable actions, the inescapable conclusion would be that the agency denied the appellant due process here because the deciding official did not give the appellant a meaningful opportunity

to respond to the action.[2] While due process does not require that a deciding official have the authority to ignore or overrule agency policies, the reply opportunity may not be an empty formality, and the deciding official should have authority to take or recommend agency action based on the reply. In this case, it appears that the Secretary of Defense delegated the "authority to execute the full range of options with respect to providing relief in individual cases" to deciding officials. Consolidation File (CF), Tab 7 at 74. Despite the broad delegation of authority to the deciding official here to review individual cases, the record shows that he limited his consideration of cases only to whether the employee had met one of several specific furlough exemptions. For example, the appellant argued in his written reply to the proposed furlough that the exemption of foreign national employees improperly created two classes of employees, which gave an improper preference to non-citizens in violation of merit systems principles. CF, Tab 8 at 50. The deciding official apparently declined to give this argument any consideration. Accordingly, I would have reversed the furlough in this case because the record shows that the appellant's response to the proposed furlough was not given any further consideration by the deciding official after it was determined that the appellant did not fall into one of several specified furlough exemptions.

_____
Anne M. Wagner
Vice Chairman

--------

[2] Contrary to footnote 4 in the Majority Opinion, I find that the appellant has been denied due process based upon the plain language in the agency's response to the appellant's request for interrogatories and not the appellant's characterization of it. IAF, Tab 12 at 10.